# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CREEKWOOD RENTAL TOWNHOMES, LLC and RICHARD LEWANDOWSKI, | Civil No. 10-2179 (JRT/JJK) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| KILN UNDERWRITING LIMITED, | |
| Defendant. | |

---

Katherine Smith Dedrick, **CHILDRESS DUFFY GOLDBLATT, LTD.**, 500 North Dearborn, Suite 1200, Chicago, IL 60654; and Scott A. Wilson, 310 4th Avenue South, Suite 5010, Minneapolis, MN 55415 for plaintiffs.

Arthur J. McColgan, II, **WALKER WILCOX MATOUSEK, LLP**, 1 North Franklin Street, Suite 3200, Chicago, IL 60606; and Stephen P. Laitinen, **LARSON KING, LLP**, 30 East 7th Street, Suite 2800, St. Paul, MN 55101-4922, for defendant.

Plaintiffs Richard Lewandowski ("Lewandowski") and Creekwood Rental Townhomes, LLC ("Creekwood") brought this action against Defendant Kiln Underwriting Limited ("Kiln"), alleging breach of contract. The parties dispute whether Plaintiffs have standing. Specifically, Kiln argues that Plaintiffs do not have standing because Lewandowski's claim against Kiln was not disclosed in Lewandowski's currently-pending Chapter 11 bankruptcy proceeding. Plaintiffs maintain that they have standing because Lewandowski disclosed this claim to the Bankruptcy Court on July 5,

2012, through a "Supplemental Disclosure."   Because Lewandowski has failed to establish at this stage that the Supplemental Disclosure to the Bankruptcy Court fulfills his disclosure obligations, the Court will order that Lewandowski properly disclose his claim against Kiln to the Bankruptcy Court.   The Court will also order the parties to conduct further briefing on the issue of Creekwood's standing to pursue this action.   The Court will deny the pending summary judgment motions that address issues on the merits, without prejudice, because the Court must first establish as a threshold matter that Plaintiffs have the ability to pursue this action.[1]

## BACKGROUND

## I.       BACKGROUND OF INSURANCE POLICY AND CLAIM

Lewandowski, his then-wife Lalainia Lewandowski, and Creekwood subscribed to a commercial property insurance policy provided by Kiln for the period from March 23, 2008, to March 23, 2009.   (Aff. of Arthur J. McColgan, Ex. 1, Oct. 21, 2011, Docket No. 104.)   The policy insured five townhome buildings located in the 7100 block of Excelsior Way in St. Louis Park, Minnesota ("the property" or "the Creekwood property").   (*Id.*)   Under the policy, Kiln agreed to pay for direct physical loss or damage to the property unless excluded.   (First Am. Compl., Ex. A, July 26, 2010, Docket No. 23.)

---

[1] At oral argument Plaintiffs abandoned their motions to strike, so the Court will dismiss them.  For the summary judgment motions, the Court will permit a time period for their refiling in the future, if the Court deems it appropriate to do so after these threshold issues are resolved.

On May 31, 2008, a hailstorm struck St. Louis Park, Minnesota.  (*See id.* ¶ 12.) Creekwood submitted a claim under the insurance policy with Kiln, alleging damage to the roof of the property during the storm.  (McColgan Aff., Ex. 3.)  Plaintiffs also subsequently requested coverage from Kiln for hailstorm damage to areas of the property other than the roofs.  (*See id.*, Ex. 12 at 3.)

On August 28, 2009, an appraisal panel issued an award under the policy for damage from the May 31 storm, calculating the replacement cost value of damage to be $262,368.51 and the actual cash value of the damage to be $251,801.14.  (*Id.*, Ex. 14.) Kiln paid $111,190.05 of this award to Plaintiffs, alleging that the remainder of the award was not covered under the policy.  (First Am. Compl. ¶ 19.)[2]  On May 28, 2010, Plaintiffs filed the instant suit alleging a single cause of action – breach of contract – claiming that Kiln has not paid them the full amount owed under the insurance policy.

## II.   OWNERSHIP OF PROPERTIES

Kiln claims that Creekwood does not have standing because it does not own the Creekwood property.   According to Kiln, current public property tax records for Hennepin County do not list Creekwood as the owner or co-owner of any of the properties subject to the insurance policy.  (Second Aff. of Kristine M. Sorenson in Support of Summ. J., Ex. A-E, July 9, 2012, Docket No. 194.)

---

[2]  It appears that Lewandowski may not have disclosed this $111,190.05 to the Bankruptcy Court, other than through their Supplemental Disclosure.

### III. BANKRUPTCY AND DISCLOSURE OF INSURANCE CLAIM

The Lewandowskis filed a joint petition for relief under Chapter 11 in the Bankruptcy Court for the District of Minnesota, Case No. 07-40727, on March 5, 2007. (First Aff. of Kristine M. Sorenson in Support of Summ. J., Ex. 2, Dec. 1, 2011, Docket No. 141.)  The case is open and assigned to Judge Gregory F. Kishel.[3]

The hailstorm that allegedly damaged the property took place while the Lewandowskis' bankruptcy was pending, on May 31, 2008.  After the storm, the Lewandowskis filed their Second Amended Disclosure Statement ("Disclosure Statement") on August 25, 2008, and the Bankruptcy Court entered an order approving the Disclosure Statement shortly thereafter.  The Lewandowskis filed their Fourth Amended Plan of Reorganization (the "Plan") on April 28, 2009, which the Bankruptcy Court confirmed on April 29, 2009.  The Lewandowskis did not disclose the pending hail claim with Kiln to the Bankruptcy Court in their bankruptcy schedules, in their disclosure statements, or at any time before the confirmation of their plan.  The Lewandowskis have not yet petitioned the Bankruptcy Court for discharge.

On June 25, 2012, this Court issued an order for further briefing to discuss an issue not yet raised by the parties: whether Plaintiffs have standing to bring their breach

---

[3] On March 27, 2007, Lewandowski filed schedules of assets and liabilities with the Bankruptcy Court. (Second Sorenson Aff., Ex. F.)  Lewandowski did not list Creekwood on his bankruptcy schedules as co-owner of the Creekwood properties or as co-obligor on the property mortgages. (*Id.*)

of contract claim despite Lewandowski's failure to disclose it to the Bankruptcy Court.[4]

After this order, on July 5, 2012, Lewandowski filed a Supplemental Disclosure Pertaining to the Debtor's Fourth Amended Plan of Reorganization ("Supplemental Disclosure") with the Bankruptcy Court. (Pls.' Suppl. Mem., Ex. A, July 9, 2012, Docket No. 189.) The Supplemental Disclosure discussed in general terms Lewandowski's claim against Kiln. (*Id.*) It stated that the action pending in this Court "and the underlying hail damage claim were not described in the Disclosure Statement or Plan nor was specific provision made in the Plan for application of proceeds recovered from [this] litigation" but that Lewandowski would deposit any proceeds received from Kiln into the bankruptcy escrow account. (*Id.*)

## ANALYSIS

## I.     STANDING

### A.     Richard Lewandowski

#### 1.     Duty to Disclose Claim to Bankruptcy Court

Kiln argues that Lewandowski does not have standing to bring this action because he has failed to properly disclose his claim against Kiln to the Bankruptcy Court. *See, e.g., Rosenhein v. Kleban*, 918 F. Supp. 98, 103 (S.D.N.Y. 1996). It is now undisputed

---

[4] Plaintiffs filed motions for partial summary judgment. (Docket Nos. 86, 132.) Kiln filed its own motion for partial summary judgment, raising, among other arguments, a request that the Court dismiss Plaintiffs' claim on grounds of judicial estoppel because Lewandowski failed to report his hail claim against Kiln to the Bankruptcy Court. (Docket Nos. 138, 139.) Kiln did not originally raise standing as an issue.

that Lewandowski had a duty to disclose the claim to the Bankruptcy Court.[5]  Without citing applicable authority, Lewandowski argues that his July 5, 2012, Supplemental Disclosure has fulfilled his disclosure obligations.  The Court must therefore determine if Lewandowski has, through the Supplemental Disclosure, adequately disclosed this claim.

A debtor must disclose assets in a manner consistent with the Bankruptcy Code. A debtor is initially required to disclose assets under the Bankruptcy Code through the filing of schedules, namely the schedule of assets and liabilities.  *See generally* 11 U.S.C. § 521(a); Fed. R. Bankr. P. 1007(b).  A debtor must also disclose assets in its mandatory disclosure statement and plan.  11 U.S.C. §§ 1121(a), 1125(b).  The acceptance or rejection of a plan may not be solicited until the Bankruptcy Court approves a written

---

[5] The Bankruptcy Code imposes an absolute and affirmative duty to schedule and disclose all assets and liabilities, including contingent and unliquidated claims.  11 U.S.C. § 521(a)(1)(B); *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999).  The debtor is subjected to a continuing duty to disclose all pending and potential claims.  *In re Coastal Plains, Inc.*, 179 F.3d at 208.  "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed."  *Id.* (internal quotation marks omitted).  Moreover, a debtor is required to provide "adequate information" on its disclosure statements.  11 U.S.C. § 1125(a)(1), (b).  The Bankruptcy Code describes "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).  Given the scope of reportable property under §§ 541(a) and 1115(a)(1), the Court finds that Lewandowski possesses a duty to disclose his claim against Kiln on his bankruptcy schedules.

disclosure statement.  *See* 11 U.S.C. § 1125(b).  The disclosure statement must provide adequate information such that a hypothetical investor could make an informed judgment about the proposed plan, such as a description of the debtor's assets and their value and nonbankruptcy litigation likely to arise.  *See* 11 U.S.C. § 1125(a)(1), (b); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989).  Once the disclosure statement is approved, creditors – who will be paid less than the full value of their claims under the plan – vote on the plan.  11 U.S.C. § 1126.  After the creditors vote, the Bankruptcy Court holds a confirmation hearing to determine whether to confirm the plan.  11 U.S.C. § 1128(a).  The contents of the approved plan must include a classification of claims and how each class of claims will be treated under the plan.  11 U.S.C. § 1123.  Once the plan is confirmed, it is binding on the debtors and creditors whether or not they have accepted the plan.  *See* 11 U.S.C. § 1141(a).  Therefore, creditors rely on a debtor's disclosure statement in order to vote on the plan, making complete disclosure important.[6]  Proper disclosure is particularly critical for fairness to creditors in a Chapter 11 case because

---

[6] Failure to disclose assets prior to confirmation of a chapter 11 plan gives the debtor an unfair advantage at confirmation over creditors entitled to vote on the plan.  *See In re Grelier*, 400 B.R. 826, 831 (Bankr N.D. Ala. 2009) (finding that clause reserving the right to prosecute any and all claims against the defendant was not adequate disclosure of a chapter 11 debtor's state-court malpractice claim); *see also Cannata v. Wyndham Worldwide Corp.*, 798 F. Supp. 2d 1165 (D. Nev. 2011) ("[I]nformation provided on bankruptcy schedules informs the actions creditors plan to take during the bankruptcy proceeding, and the same information forms the basis upon which the bankruptcy court decides whether to approve a reorganization plan.").

causes of action not properly disclosed vest in the **debtor** upon the confirmation of the plan.[7] 11 U.S.C. § 1141(b).

The initial schedules, disclosures, and plan may sometimes be modified. "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a); *see also In re Grelier*, 400 B.R. 826, 829 (Bankr. N.D. Ala. 2009). Also, "[i]f the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated;" for example, a plan may be modified to increase the amount of payments to a particular class of creditors. 11 U.S.C. § 1127(e). However, courts will sometimes estop a debtor from pursuing a claim in court when the debtor failed to comply with the Bankruptcy Code and did not properly disclose the claim in a timely manner. *See In re H&L Developers, Inc.*, 178 B.R. 71, 74 (Bankr. E.D. Pa. 1994) ([W]hile this amendment [to the disclosure statement and plan] contained sufficient information to provide creditors with notice of this asset, it was too little too late.").[8]

---

[7] "Regardless of whether scheduled, **all** property of the estate vests in the debtor upon plan confirmation: except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." *In re JZ L.L.C.*, 371 B.R. 412, 419 (B.A.B. 9th Cir. 2007) (internal quotation marks omitted); *see also In re Coastline Care, Inc.*, 299 B.R. 373, 378 (Bankr. E.D.N.C. 2003).

[8] *See also In re Coastline Care, Inc.*, 299 B.R. at 378 (holding that the debtor's plan of reorganization could not be reopened to account for omitted assets and thus the debtor may be judicially estopped from pursuing the claim).

It appears that Lewandowski has not modified his schedules, disclosure statement, or plan to account for his claim against Kiln.  Although Lewandowski filed a document entitled "Supplemental Disclosure" describing the claim against Kiln, it is unclear whether this document fulfills Lewandowski's disclosure obligations, and Plaintiffs have not cited to any authority supporting that it does so.

Lewandowski avers that he will seek approval of the Bankruptcy Court for any settlement of the claim and deposit any proceeds from the impending litigation into the bankruptcy escrow account.  (Pls.' Suppl. Mem., Ex. A.)  However, an unrequited statement that "Lewandowski will account for any proceeds recovered from this cause of action" (*id.*), is likely insufficient to satisfy Lewandowski's obligations because nothing in the Supplemental Disclosure appears to bind Lewandowski.  The Court thus finds that Lewandowski has not established at this stage that the Supplemental Disclosure is adequate to fulfill his bankruptcy disclosure obligations.

Furthermore, it appears that Lewandowski may not have complied with his duty to obtain approval to engage counsel to institute the present action on his behalf.  *See* 11 U.S.C. § 327(a).  Although Lewandowski received approval to employ Childress Duffy as counsel, this approval was done prior to the hail damage and does not seem to involve his claim against Kiln.  (*See* Order Authorizing Emp't of Special Counsel, *In re Lewandowski*, No. 07-40727 (Bankr. D. Minn.), Jan. 16, 2008, Docket No. 234.)

## 2. Standing

Because Lewandowski has failed to properly disclose his claim against Kiln, the Court must determine if Lewandowski has standing to pursue this action. "It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

Section 541(a) of the Bankruptcy Code provides that all property of the bankrupt debtor vests in the bankruptcy estate upon filing of the bankruptcy petition. Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[9] Thus, when Lewandowski filed for bankruptcy, his property became property of the bankruptcy estate. However, in a Chapter 11 bankruptcy, "the confirmation of a plan vests all of the property of the estate **in the debtor**" unless the plan or confirmation order provides otherwise. 11 U.S.C. § 1141(b) (emphasis added). Thus, because the Bankruptcy Court has confirmed Lewandowski's plan, estate property has vested in Lewandowski and Lewandowski has standing to pursue this claim. *See id.*; *see also Greenheart Durawoods, Inc. v. PHF Int'l Corp.*, No. 91 Civ. 3731, 1994 WL 652434, at *3 (S.D.N.Y. Nov. 18, 1994); *In re Coastline Care, Inc.*, 299 at 378; *In re JZ L.L.C.*, 371 B.R. at 419.

---

[9] Proceeds stemming from that property are also subsumed in the bankruptcy estate. *See* 11 U.S.C. § 541 (a)(6). In addition, in the case of an individual Chapter 11 debtor, property of the estate includes "all property . . . the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1115(a)(1).

### 3. Lewandowski's Pursuit of this Action

Because Lewandowski has standing to bring his breach of contract claim, the Court must decide if Lewandowski is able to pursue this action without accounting for his claim in the Bankruptcy Court. In the interest of ensuring a fair and equitable distribution of any potential litigation proceeds to creditors, some courts have found that a stay is appropriate in cases such as this one where a claim has not been properly disclosed to the bankruptcy court.[10] Likewise here, the Court finds that Lewandowski may not pursue his claim against Kiln until he establishes that he has properly disclosed his claim. The Bankruptcy Code states that **only** "property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." *See* 11 U.S.C § 1141(c). As the Federal Circuit stated in *Phoenix Petroleum Co. v. United States*, No. 98-5124, 1999 WL 521189, at *6 (Fed. Cir. July 23, 1999),

> If . . . section 1141(b)[11] vests . . . a debtor with [a claim that has not been disclosed], then the 'free and clear' provision of section 1141(c) may more appropriately be given effect by allowing the plaintiff to proceed with the

---

[10] *See, e.g.*, *Phoenix Petroleum Co. v. United States*, No. 98-5124, 1999 WL 521189, at *6 (Fed. Cir. July 23, 1999) (ordering a stay of the proceedings so as to allow plaintiff to petition the bankruptcy court for permission to pursue its claims); *Greenheart*, 1994 WL 652434, at *5 (same); *WinMark Ltd. P'ship v. Miles & Stockbridge*, 693 A.2d 824, 831 (Md. 1997) (same); *see also Stein v. United Artists Corp.*, 691 F.2d 885, 893 (9th Cir. 1982) (explaining that "[t]he proper procedure to enforce any newly discovered asset . . . is to petition the bankruptcy court to reopen the proceedings . . . to permit the court to decide whether reopening is desirable and, if so, whether the claim is to be administered for the benefit of the creditors or abandoned" and also explaining that the court would have stayed the district court action had the parties petitioned the district court for a stay).

[11] 11 U.S.C. § 1141(b) states, "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

> claim **so long as steps are taken to ensure that the claim does not remain free and clear of all claims and interests of the creditors**. In our view, such an assurance would ensue most efficiently by ordering a stay of the proceedings so as to allow plaintiff to petition the bankruptcy court. In this way a windfall to the defendant would be prevented and all creditors would potentially benefit from the bankruptcy court's expertise in a readministration of newly found assets.

(emphasis added). As in *Phoenix*, this Court finds it essential for Lewandowski to properly disclose his claim to the Bankruptcy Court so that Lewandowski does not inequitably obtain an award in this case free and clear from the claims of creditors. While it is important that Kiln be held responsible for any violations of its insurance policy, it is equally if not more important that Lewandowski properly disclose this claim to the Bankruptcy Court.

Accordingly, to ensure a fair and equitable distribution of potential proceeds to Lewandowski's creditors, the Court will require Lewandowski to establish that he has adequately disclosed his claim. It seems to the Court that the most equitable result would be for Lewandowski to request a modification of the bankruptcy plan to allow any proceeds from this action to be distributed to creditors. *See* 11 U.S.C. § 1127(e). If Lewandowski determines that this is not the proper result, he may also provide the Court with the applicable bankruptcy statutes and case law to demonstrate that his disclosures to the Bankruptcy Court are adequate. Also, Lewandowski should demonstrate to this Court that he has permission from the Bankruptcy Court to employ counsel for the purposes of pursuing this action. If Lewandowski does not establish that he has adequately disclosed his pursuit of this claim to the Bankruptcy Court within sixty days

of this order, the Court will likely judicially estop Lewandowski from pursuing his claim against Kiln and dismiss this action.[12]

## B.     Creekwood Rental Townhomes, LLC

The Court must next address Creekwood's standing to pursue this claim.  Kiln argues that Creekwood lacks standing for two reasons.  First, Kiln argues generally that Lewandowski, as sole owner and manager of Creekwood, controlled the actions of Creekwood and thus Creekwood and Lewandowski are in privity for purposes of standing.  The Court has found, *supra*, that Lewandowski has standing; therefore, Kiln's argument that Lewandowski's lack of standing affects Creekwood's standing is moot.

However, it is unclear whether Creekwood should be judicially estopped if Lewandowski fails to properly disclose this claim to the Bankruptcy Court.  The parties have submitted almost no evidence or argument to the Court about the relationship between Lewandowski and Creekwood and whether it would be appropriate to hold Creekwood responsible for the actions of Lewandowski.  *See In re Hecker*, 414 B.R. 499, 503-04 (Bankr. D. Minn. 2009) (outlining elements of piercing the corporate veil as applied to limited liability companies).  The Court thus cannot decide this issue at this stage.

---

[12] The Court declines to judicially estop Lewandowski at this stage but finds that judicial estoppel will likely be appropriate if Lewandowski persists in his failure to adequately disclose his claim against Kiln.  *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (holding that to apply judicial estoppel, "the debtor's non-disclosure of the claim must not be inadvertent and must result in the debtor gaining an unfair advantage.").

Second, Kiln argues that Creekwood has no insurable interest in the Creekwood property and thus lacks independent standing to pursue the breach of contract claim against Kiln.[13]  Kiln raised this argument for the first time in its supplemental brief to the Court on July 9, 2012, filed after Plaintiffs' supplemental brief.  (*See* Mem. in Support of Mot. for Summ. J., July 9, 2012, Docket No. 193.)  Because Kiln only recently raised this argument, Plaintiffs have not had an adequate opportunity to respond and the Court cannot decide this issue.

The Court has inadequate information to determine if it should judicially estop Creekwood or dismiss Creekwood for lack of standing.  Accordingly, the Court will direct the parties to simultaneously brief the following issues within thirty days of this order: (1) if the Court judicially estops Lewandowski from pursuing this action because of his failure to disclose his claim against Kiln to the Bankruptcy Court,[14] whether the Court should also judicially estop Creekwood from bringing its breach of contract claim

---

[13] As support for this argument, Kiln points out that Lewandowski did not list Creekwood as an owner or co-owner of the Creekwood properties in his bankruptcy schedules and that, per the public property tax records for Hennepin County, Creekwood does not own any of the thirty-eight townhomes.  On the other hand, the Court notes that both Lewandowski and Creekwood are covered under the disputed insurance policy, and Plaintiffs alleged in their complaint that Creekwood is an owner of the Creekwood property.

[14] Kiln should not repeat the arguments it has already made in support of judicially estopping Lewandowski.  Instead, the Court directs Kiln to focus on **Creekwood** and how it can be held liable for the actions of Lewandowski in Bankruptcy Court.  The Court notes that conclusory statements alleging that Creekwood is responsible because Lewandowski is the sole owner and manager of Creekwood are insufficient; instead, Kiln must demonstrate why piercing the corporate veil is appropriate under these facts.  *See In re Hecker*, 414 B.R. at 503-04.  Similarly, Plaintiffs are directed to focus in this brief on whether **Creekwood** can be held liable for the actions of Lewandowski, not whether it is appropriate to estop Lewandowski in the first instance.

against Kiln, and (2) whether Creekwood owns the Creekwood property and, if not, what effect this lack of ownership has on Creekwood's standing. The parties are permitted to file responses within fifteen days.[15]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Within sixty (60) days of this order, Plaintiff Lewandowski must submit either (a) proof that his bankruptcy plan has been modified to reflect his claim against Kiln or (b) other documentation establishing that he has properly disclosed his claim against Kiln to the United States Bankruptcy Court for the District of Minnesota, Case No. 07-40727. Lewandowski must also submit documentation showing that he has permission to employ counsel for the purpose of pursuing this action against Kiln.

2.     The parties shall simultaneously submit up to eight-page briefs on the following two issues within thirty (30) days of this order: (a) if the Court judicially estops Lewandowski from pursuing this action because of his failure to disclose his claim against Kiln to the Bankruptcy Court, whether the Court should also judicially estop Creekwood from bringing its breach of contract claim against Kiln, and (b) whether Creekwood owns the Creekwood property and, if not, what effect this lack of ownership

---

[15] If the Court wishes to hold a hearing after reviewing the parties' briefs, it will contact the parties.

has on Creekwood's standing.  The parties are permitted to file responses within fifteen (15) days that shall not exceed five pages each.

3.     Plaintiffs' motion for partial summary judgment [Docket No. 84] is **DENIED without prejudice.**

4.     Plaintiffs' motion to strike certain portions of affidavits and exhibits [Docket No. 119] is **DENIED without prejudice**.

5.     Plaintiffs' motion for partial summary judgment [Docket No. 132] is **DENIED without prejudice.**

6.     Defendants' motion for summary judgment [Docket No. 138] is **DENIED without prejudice.**

7.     Plaintiffs' first motion to strike [Docket No. 157] is **DENIED without prejudice.**

DATED:   September 28, 2012               _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                       JOHN R. TUNHEIM
                                            United States District Judge